# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CHARLES E. COOK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:13-cv-662 |
| | ) JUDGE CRENSHAW |
| **HON. JOHN M. McHUGH, Secretary,** | ) |
| **Department of the Army,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Charles Cook alleges that the United States Army discriminated against him in violation of the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated § 4-21-101 *et seq.*, and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[1] The Army has filed a motion to dismiss or, in the alternative, for summary judgment, arguing that Plaintiff's claims should be dismissed. (Doc. No. 41.) For the following reasons, the Army's motion is **GRANTED**.

## I. Factual and Procedural History

Plaintiff served as a flight simulator training instructor at Fort Campbell, Tennessee, for twenty-five years when a series of incidents caused the Army to take several allegedly adverse employment actions against him. The first incident occurred on November 4, 2010. Fort Campbell has designated specific areas on the post for physical training of military personnel and has limited vehicle traffic in those areas during certain hours of the day for the safety of the personnel. On

---

[1] Although Plaintiff lists violations of the Civil Rights Act of 1991 as a separate claim from the violations of Title VII of the Civil Rights Act of 1964, the Court interprets this as a single claim under Title VII, as amended by the Civil Rights Act of 1991.

November 4, 2010, the Plaintiff crossed the physical training route in a vehicle at a restricted time. Master Sergeant Brian Walls, who was on duty guarding the route, approached Plaintiff and requested that he take an alternate route because the road was closed for physical training. (Doc. No. 50 at 2-3.) Plaintiff responded that he was only crossing the route to get to the parking lot and did not change his direction. (Id. at 3.) Walls followed Plaintiff to the parking lot to discuss his failure to comply with his instructions. Walls later reported that Plaintiff was rude and told him to take the matter up with Plaintiff's supervisor. (Id.) Cook's first-level supervisor, Carolyn VanBruggen, was out of the office at the time, so Walls filled out a form explaining the incident. (Id.) Upon her return on November 9, 2010, VanBruggen asked Plaintiff about the incident. Plaintiff did not deny that he ignored Walls's direction, crossed the training route, and directed Walls to take it up with his supervisory chain. (Id. at 3-4.) Plaintiff responded to VanBruggen by e-mail, stating that he did not violate the policy limiting vehicular access to certain areas of the post during physical training because he only *crossed* the route and did not *travel* on it. (Id. at 4.)

On November 23, 2010, John Watson, Plaintiff's second-level supervisor, notified Plaintiff that he intended to take formal disciplinary action based on this incident. (Id. at 2, 4.) On December 2, 2010, Watson determined that the charge was valid. (Id. at 4.) Watson met with Plaintiff, along with a union representative, and asked if he wanted to say anything. (Id.) Plaintiff indicated he did not wish to speak and also told his union representative not to speak. (Id. at 4-5.) Watson issued a formal Letter of Reprimand, which remained in Plaintiff's personnel file for one year. (Id. at 5.) On December 7, 2010, Plaintiff contacted the Fort Campbell Equal Employment Opportunity ("EEO") Office by e-mail to request an appointment. (Id.)

The second incident occurred the same day that Watson issued the Letter of Reprimand. (Id.) Plaintiff was a member of a group called Leadership Fort Campbell. (Id.) On December 2,

2010, Plaintiff received an e-mail sent to all alumni of Leadership Fort Campbell requesting assistance for an upcoming event during regular duty hours. (Id.) Plaintiff responded by e-mail to the entire alumni e-mail group that he would like to help but would likely be required by his "supervisory chain of command" to take annual leave to participate, and that he did not have enough leave to participate. (Id. at 6.) Watson felt that Plaintiff's e-mail implied a lack of support for the Leadership Fort Campbell program at a higher level and decided to issue Plaintiff a written counseling. (Id.) Watson spoke with a union representative who told him that Plaintiff was not entitled to have a union representative with him when Watson issued the counseling because it was not disciplinary or an investigatory meeting. (Id.) On December 8, 2010, Watson issued the written counseling. (Id.)

On December 9, 2010, Plaintiff met with an EEO specialist at Fort Campbell and advised her that he wanted to have his contact with the EEO on the record but did not want to file a complaint at that time. (Id. at 7; Doc. No. 43-3.) The EEO specialist provided Plaintiff with information regarding the EEO complaint process and emphasized that he had 45 days to initiate the EEO complaint process. (Id. at 14.) Instead, Plaintiff chose to file a union grievance in January 2011, alleging that VanBruggen and Watson had failed to follow union procedures when issuing the Letter of Reprimand and the written counseling. (Id.) Plaintiff did not initiate the EEO process until August 3, 2011, almost eight months after the two challenged employment actions, at which point he submitted the EEO intake questionnaire to the Fort Campbell EEO Office. (Id.; Doc. No. 43-3.) On September 4, 2011, Plaintiff filed a formal EEO complaint alleging, among other things, that the December 2010 Letter of Reprimand and written counseling were issued in a manner in violation of his union rights in retaliation for his prior EEO activity in October 2009. (Doc. No. 42-2.)

3

The third incident involved Plaintiff's multiple absences from his duty station without permission from his supervisor on three different dates, all in October of 2011. At the time, Plaintiff's first-level supervisor was Steve Zuercher. (Doc. No. 50 at 8.) In August 2011, when Zuercher moved into the supervisory position previously held by VanBruggen, he notified all personnel under his supervision that they were no longer required to sign in or out when attending work-related functions or events, but that they were required to request permission to ensure that their work was not disrupted in their absence. (Id.) Consistent with this policy, Plaintiff had previously requested Zuercher's permission to attend a Leadership Fort Campbell training in August 2011.

However, on October 21, 2011, the Human Resources ("HR") director notified Zuercher that Plaintiff allegedly had divulged privileged information that he had gained from the union while acting as a Leadership Fort Campbell mentor during a function in October 2011. (Id. at 8-9.) That allegation is not at issue in this matter, but during that conversation, the HR Director revealed that Plaintiff had attended Leadership Fort Campbell trainings on October 18 and 20, 2011. Zuercher claims this was the first time he was aware that the Plaintiff had been absent from his duty station on these dates. (Id. at 9.) Plaintiff argues that he had notified Zuercher that he would be participating as a mentor with Leadership Fort Campbell and that Zuercher, like Plaintiff, was an alumni of Leadership Fort Campbell and received e-mails about its functions. Plaintiff felt that this was sufficient notice to Zuercher that he would be absent from his duty station on particular dates for Leadership Fort Campbell functions. (Id.) Plaintiff does not deny that he did not have Zuercher's permission to be absent from work for the two trainings in October. (Id.)

Plaintiff admits that he left his duty station without permission from his supervisor again on October 27, 2011, when he attended an EEO luncheon. (Id. at 10.) Instead of asking permission,

Plaintiff sent Zuercher an e-mail mid-morning notifying him that he would be attending the luncheon. At 11:22 a.m., Zuercher responded by e-mail as follows:

> [A]re you asking for permission to attend or telling me that you are? If you are asking for permission, what have you done with respect to your co-workers covering the support requirements in the simulators?
>
> If you are telling me, the response is no, you are not going to attend. The EEO event was planned long ago and you had ample opportunity to request to be in attendance. As with any absence, you must request authority, you don't give it to yourself.

(Id.) Plaintiff did not respond to Zuercher's e-mail until later in the afternoon, after having attended the luncheon. (Id. at 11.)

On November 7, 2011, Zuercher notified Plaintiff that he intended to pursue disciplinary action for his being absent from his place of duty without authority on these three dates. (Id.) Zuercher also requested that the timekeeper change the 4.5 hours Plaintiff was not at his duty station from regular work hours to time in which he was absent without leave ("AWOL"). (Id.) On November 15, 2011, Zuercher proposed that Plaintiff be suspended without pay for two days for being AWOL. (Id.) The Notice of Proposed Suspension identified the three dates on which Plaintiff had been away from his place of duty without permission, and also stated the following:

> In proposing an appropriate penalty, I have considered that you were given a Letter of Reprimand on 2 December 2010 for Failure to observe Physical Training Route driving restrictions. You were also counseled in December of 2010 regarding untruthful public comments you made regarding this command.

(Doc. No. 43-18 at 2.) On December 12, 2011, Plaintiff amended his September 4, 2011 EEO complaint to allege that the Army charged him 4.5 hours AWOL and deducted those hours from his pay in retaliation for his EEO complaint. (Doc. No. 43-24.)

On February 10, 2012, after considering Plaintiff's responses to the proposed suspension, the case file, the relevant mitigating and aggravating factors, and the Army's Table of Penalties, Watson sustained the two-day suspension, which occurred on February 27-28, 2012. (Doc. No. 50

at 13.) On February 13, 2012, Cook amended his September 4, 2011 EEO complaint again, alleging that he was suspended for 2 days without pay for being AWOL in retaliation for his prior EEO activity. (Doc. No. 43-25.) On April 8, 2013, the Army issued a final agency decision finding that Plaintiff was not the victim of discrimination. (Doc. No. 18-4.)

On July 3, 2013, Plaintiff filed this action. On February 25, 2014, the Court granted the Army's motion to dismiss as to Plaintiff's claims of discriminatory promotions, training, and job assignment on the basis of race, color, age, and/or gender, which Plaintiff alleged violated Title VII and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–634. (Doc. Nos. 28-29.) Plaintiff's THRA claims and Title VII retaliation claims, on which the Army now seeks judgment, are the only remaining claims.

## II.     Legal Standard

The Army's motion is styled as a motion to dismiss or, in the alternative, for summary judgment. Because the Court has considered matters beyond the Complaint, it will treat the Army's motion as one requesting summary judgment. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009). Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Pennington v. State Farm Mut. Automobile Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'" Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the moving party

6

is able to meet this initial burden, the non-moving party must then "set forth the specific facts showing that there is a genuine issue for trial." Id. (quoting Fed. R. Civ. P. 56(e)). Conclusory allegations and subjective perceptions or assessments do not constitute evidence "sufficient to stave off summary judgment." Wade v. Knoxville Utilities Bd., 259 F.3d 452, 463 (6th Cir. 2001).

**III.    Legal Analysis**

The Army moves for judgment on Plaintiff's Title VII retaliation claims and on his THRA claim.

**A. Title VII Retaliation Claims**

Plaintiff alleges that the Army took the following four adverse employment actions, each in retaliation for his prior EEO complaints: (1) issued the December 2, 2010 Letter of Reprimand for his crossing the physical training route; (2) issued the December 8, 2010 written counseling for his e-mail to the Leadership Fort Campbell participants; (3) charged him on November 7, 2011 with being AWOL for leaving his post without permission from his supervisor on October 18, 20, and 27, 2011; and (4) suspended him without pay for two days, which was decided on February 20, 2012 and implemented on February 27-28, 2012. The Army argues that Plaintiff failed to exhaust his administrative remedies as to the first two challenged employment actions, and that all four claims fail on the merits because he can neither make a *prima facie* case of retaliation nor rebut the Army's legitimate, non-retaliatory reasons for each action.

**1. Exhaustion of Administrative Remedies**

The Army argues that Plaintiff has failed to exhaust his administrative remedies as to the December 2, 2010 Letter of Reprimand and the December 8, 2010 written counseling. Plaintiff responds that he did "initiate contact" with the EEO office within 45 days as required by the applicable federal regulations, because he met with the EEO specialist on December 9, 2010.

7

However, Plaintiff does not dispute that instead of initiating the EEO complaint process, he elected to pursue his claims through the union grievance process, and that he did not submit the EEO intake questionnaire to the EEO Office until August 3, 2011, almost eight months after the events at issue.

"The right to bring an action under Title VII regarding equal employment opportunity in the federal government is predicated upon the timely exhaustion of administrative remedies, as set forth in the EEOC regulations." Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991); Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 993 (6th Cir. 2009). The regulations require an aggrieved employee to "initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action" in order to facilitate informal resolution of the dispute. 29 C.F.R. § 1614.105(a)(1). Failure to timely seek EEO counseling is grounds for dismissal of the discrimination claims. Benford, 943 F.2d at 612.

Plaintiff did not "initiate contact," as that phrase has been defined by the EEOC, within 45 days of the challenged employment actions. "The EEOC has held that in order to 'initiate contact' an employee must: (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor; (2) exhibit an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination.'" Johnson v. Cohen, 6 Fed. App'x 308, 311 (6th Cir. 2001) (quoting Pauling v. Secretary of the Dep't of Interior, 960 F. Supp. 793, 803 (S.D.N.Y.1997)). Plaintiff did not exhibit an intent to begin the EEO process until at least August 3, 2011, when he filed his initial interview data sheet with the Fort Campbell EEO Office, even though it is undisputed that the EEO specialist emphasized to him that he had 45 calendar days to initiate the EEO complaint process. (Doc. No. 50 at 14.) Plaintiff was well informed about

8

the EEO process and made a deliberate choice to pursue a union grievance rather than an EEO complaint. Plaintiff failed to exhaust his administrative remedies on the Letter of Reprimand and the written counseling, so the retaliation claims based on those employment actions are dismissed.[2]

### 2. The Merits of the Remaining Title VII Retaliation Claims

The challenged employment actions that Plaintiff *did* administratively exhaust are the November 7, 2011 AWOL charge and the February 10, 2012 two-day suspension without pay, both for leaving his post without permission from his supervisor on October 18, 20, and 27, 2011. Plaintiff amended his initial September 4, 2011 EEO complaint within 45 days of each of these employment actions. Specifically, after the November 7, 2011 AWOL charge, Plaintiff amended his September 4, 2011 EEO complaint on December 12, 2011 (Doc. No. 43-24), and after the February 10, 2012 decision to suspend him for two days without pay, he amended the EEO complaint on February 13, 2012 (Doc. No. 43-25).

Title VII makes it unlawful for an employer "to discriminate against any . . . employee or applicant . . . because [the employee] has opposed any practice, made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3. As with a Title VII discrimination claim, a Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." Imwalle v. Reliance Medical Products,

---

[2] Even if the Plaintiff had exhausted his administrative remedies with respect to the Letter of Reprimand and the written counseling, the Court nonetheless would enter judgment for the Army on these claims for the reasons given in Section III.A.2. Over thirteen months elapsed between Plaintiff's October 2009 EEO complaint and the December 2010 Letter of Reprimand and written counseling. Thus, there is no temporal proximity from which a trier of fact could infer causation. Plaintiff has no other evidence of retaliatory motive.

9

Inc., 515 F.3d 531, 538 (6th Cir. 2008).

Here, Plaintiff has introduced circumstantial evidence. Therefore, the Court analyzes Plaintiff's retaliation claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff bears the initial burden to establish a *prima facie* case of retaliation. If the plaintiff succeeds in making out the elements of a *prima facie* case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the defendants' proffered reason is pretextual. Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007). "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." Id.

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must show that: (1) he or she engaged in protected activity; (2) the exercise of protected rights was known to the defendant; (3) the defendant took an adverse employment action against the plaintiff, and (4) there was a causal connection between the protected activity and the adverse action. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013). To establish a causal connection, the plaintiff must establish that his or her protected activity was a "but-for" cause of the alleged adverse action by the employer. University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2533–34 (2013).

Plaintiff has failed to show that there was a causal connection between his protected activity and the Army's charging him as AWOL and suspending him without pay for two days. Even assuming these actions constitute adverse employment actions, an issue about which the parties disagree, Plaintiff presents no evidence from which a reasonable juror could find that the

10

Army was motivated by retaliatory animus, much less that the protected activity was a "but-for" cause of the alleged adverse action.

Although temporal proximity can be sufficient to create a causal connection "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity," "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with *other evidence* of retaliatory conduct to establish causality." Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 505 (6th Cir. 2014) (emphasis added). Although the Sixth Circuit has not established a bright-line rule for temporal connections in retaliation, it has found a four-month period of time insufficient to establish a *prima facie* case of retaliation. Cooper v. City of N. Olmsted, 795 F.2d 1265, 1272-73 (6th Cir. 1986).

Here, Plaintiff's September 4, 2011, EEO complaint is three months from the November 7, 2011 AWOL charge. Based on the facts of this case, the Court concludes that this fact alone is insufficient evidence to support a finding of causation between Plaintiff's protected activity and the adverse employment action. Even if the three-month period of time were sufficient, as a general matter, to establish a *prima facie* case of retaliation, the facts of this case do not support such a finding. First, any adverse action the Army took against Plaintiff at any given time would likely have been in proximity to his engaging of protected activity given the frequency with which he engaged in such activity. The record shows the following protected activities: an EEO complaint in October 2009, a "contact" with an EEO specialist on December 9, 2010, a union grievance in January 2011, an initial intake form submitted to the EEO on August 3, 2011, and an EEO complaint on September 4, 2011. Second, there simply is no evidence in the record that any of the

11

Plaintiff's supervisors ever made derogatory remarks about Plaintiff's participation in protected activity, nor is there any other evidence of retaliatory motive.

Furthermore, even if Plaintiff could establish a *prima facie* case of retaliation, he has failed to meet his burden to demonstrate that the Army's proffered reason for charging him with being AWOL and suspending him without pay was not the true reason for the employment decision. The Army has proffered that Plaintiff's leaving his work station without permission of his supervisor on three separate occasions during a one-month period was a legitimate, non-retaliatory reason for the adverse employment actions.

To avoid summary judgment once an employer proffers a legitimate non-retaliatory reason for an adverse employment action, the employee must point to specific evidence that the employer's proffered reason is pretextual and that "the desire to retaliate was the but-for-cause of the challenged employment action." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013). A plaintiff can demonstrate pretext by showing that the employer's proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000). To establish pretext under the second method, the plaintiff may attack the employer's explanation "by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant." Smith v. Leggett Wire Co., 220 F.3d 752, 759 (6th Cir. 2000). The "key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998). "If a plaintiff can show that the employer's proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination." Dews, 231 F.3d at 1021. "Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times." Id.

Plaintiff has not shown that the Army's proffered reason had no basis in fact, did not actually motivate it, or was insufficient to warrant the conduct. Plaintiff does not dispute that Zuercher notified his supervisees that they must request permission to attend work-related functions or that he failed to request permission on the three dates that formed the basis of the Army's adverse actions. He also does not dispute that, in the prior year, he crossed the physical training route in violation of both policy and an explicit request from the officer guarding the route or that he sent the e-mail to the Leadership Fort Campbell group that his supervisors deemed to be inappropriate. Plaintiff has not presented evidence sufficient to permit a trier of fact to infer that the Army's proffered reason is pretextual and that retaliation was the "but-for" cause of the adverse actions.

Plaintiff cannot make a *prima facie* case of retaliation or rebut the Army's reason for the challenged employment actions. Accordingly, the Court grants the Army's motion for summary judgment on the Title VII retaliation claims related to the AWOL charge and the two-day suspension without pay.

B. **Tennessee Human Rights Act Claims**

Plaintiff concedes that his claim for violations of the Tennessee Human Rights Act should be dismissed with prejudice, and the Court dismisses this claim.

IV. **Conclusion**

For the foregoing reasons, the Court **GRANTS** the Army's motion for summary judgment as to Plaintiff's THRA and Title VII retaliation claims. As these were the only claims remaining in this matter, this case will be DISMISSED. An appropriate order shall issue.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE